# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>CHRISTOPHER E. MORGAN,<br><br>　　　　　　　　　　Defendant. | Case No. 16-CR-133-2-JPS<br><br><br>**ORDER** |

**1.　BACKGROUND**

On February 8, 2021, Defendant filed a motion for compassionate release. (Docket #72). The Government filed a response, (Docket #80), and Defendant replied, (Docket #84). The Court has reviewed these submissions and will deny Defendant's motion for compassionate release.

**2.　FACTS**

In 2016, Defendant pleaded guilty to one count of brandishing a firearm in furtherance of a crime of violence. (Docket #63 at 1). In the plea agreement, Defendant admitted that he not only served as the getaway driver during an armed robbery, but, immediately before the robbery, he provided a loaded firearm to his co-actor, Anthony Chappell, with knowledge that Chappell intended to rob a Walgreens pharmacy. (Docket #23 at 13–15). When the firearm was recovered from Defendant a short time after the robbery, it was loaded with ten rounds, including one in the chamber. (*Id.*) On July 6, 2017, this Court sentenced Defendant to 84 months in prison, the statutory mandatory minimum on the count of conviction. (Docket #63 at 2). The Bureau of Prisons ("BOP") projects that the defendant will be released from custody on August 10, 2022. (Docket #80 at 2).

Defendant is a 33-year-old male. (Docket #62 at 2). He is currently detained at Federal Correctional Institution Sandstone ("FCI Sandstone") in Sandstone, Minnesota. As of May 14, 2021, FCI Sandstone reports that no inmates or staff members have active cases of COVID-19.[1] One inmate death has been reported, and 671 inmates and 53 staff have recovered from the virus.[2] Further, FCI Sandstone is reporting that 114 of its staff and 286 of its inmates have been *fully* vaccinated.[3] Defendant tested positive for COVID-19 and has since recovered. (Docket #72 at 5).

As grounds for his motion, Defendant relies on the general threat posed by the COVID-19 pandemic and the possibility of variants of the virus infecting FCI Sandstone. (Docket #72 at 5). Defendant does not point to any underlying medical condition that makes him more susceptible to COVID-19. (Docket #80 at 2). Defendant's "primary reason" for seeking release is to care for his grandmother, who has lung cancer, and his 94-year-old great-grandmother, who was recently diagnosed with cancer. (Docket #72 at 5–6).

3. **LEGAL STANDARD**

The Court can modify a term of imprisonment "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or thirty days after the warden at the defendant's facility has received such a request for release, "whichever is earlier."

---

[1] Fed. Bureau of Prisons, *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus/ (last visited May 14, 2021).

[2] *Id.*

[3] *Id.*

18 U.S.C. § 3582(c)(1)(A). There must also be "extraordinary and compelling reasons warrant[ing] such a reduction[.]" *Id.* § 3582(c)(1)(A)(i).

While § 3582(c)(1)(A) instructs that a reduction must also be "consistent with applicable policy statements issued by the [United States] Sentencing Commission," this circuit recently held that the relevant policy statement, U.S.S.G. § 1B1.13, is inapplicable to prisoner-initiated motions for compassionate release. *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020). Therefore, a court has discretion when determining what constitutes an "extraordinary and compelling" reason warranting compassionate release. *Id.* ("[T]he trailing paragraph of § 3582(c)(1)(A) does not curtail a district judge's discretion. Any decision is 'consistent with' a nonexistent policy statement."). A district court may also "make the same determinations that would normally be left to the Director of the Bureau of Prisons [under the catchall provision at U.S.S.G. § 1B1.13 n.1(D)]." *United States v. Brown*, Case No. 01-CR-196-JPS, 2020 WL 4569289, at *4 (E.D. Wis. Aug. 7, 2020). Yet, this Court will evaluate prisoner-initiated motions for compassionate release with due regard for the guidance provided in § 1B1.13 because it "provide[s] a working definition of 'extraordinary and compelling reasons' . . . [which] can guide discretion without being conclusive." *Gunn*, 980 F.3d at 1180; *see also United States v. Mays*, Case No. 1:08-cr-00125-TWP-DML, 2020 WL 7239530, at *3 (S.D. Ind. Dec. 9, 2020) (evaluating compassionate motions brought under the "extraordinary and compelling" prong of § 3582(c)(1)(A) with "due regard" for § 1B1.13).

The commentary to the Sentencing Guidelines explains that "extraordinary and compelling reasons exist" when "[t]he defendant is suffering from a terminal illness, (i.e., a serious and advanced illness with an end of life trajectory)," such as cancer or advanced dementia.

U.S.S.G. § 1B1.13 n.1.(A)(i). The commentary also considers a defendant's medical condition to be an extraordinary and compelling reason if:

> [t]he defendant is suffering from a serious physical or mental condition, suffering from a serious functional or cognitive impairment, or experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id.* § 1B1.13 n.1.(A)(ii).

The Court will also consider whether "the defendant is not a danger" to others or the community, as provided in 18 U.S.C. § 3142(g). *Id.* § 1B1.13(B)(2).

Prior to modifying a term of imprisonment, the Court must also consider the sentencing factors set forth in 18 U.S.C. § 3553(a), if applicable. 18 U.S.C. § 3582(c)(1)(A). Pursuant to § 3553(a), when determining the sentence to be imposed, the Court shall consider, among other things: the nature and circumstances of the offense; the defendant's history and characteristics; and the need for the sentence to (1) reflect the seriousness of the offense, promote respect for the law, and provide just punishment, (2) afford adequate deterrence, (3) protect the public, and (4) provide the defendant with effective training, care, and/or treatment.

4. **ANALYSIS**

First, the Government concedes that Defendant exhausted his administrative remedies. (Docket #80 at 4); *see Gunn*, 980 F.3d at 1179 ("Failure to exhaust administrative remedies is an affirmative defense, not a jurisdictional issue that the court must reach even if the litigants elect not to raise it.") (internal citations omitted). The Court next determines whether

Defendant has an extraordinary and compelling reason warranting his release.

The outbreak of COVID-19, together with a defendant's underlying medical conditions that place the defendant at "high risk" should he contract the disease, may establish an extraordinary and compelling reason warranting release. *See, e.g.*, *United States v. Gonzales*, Case No. 13-CR-101-JPS, 2020 WL 4437154, at *4 (E.D. Wis. Aug. 3, 2020). But, with regard to COVID-19, "reliance on circumstances applicable to everyone in prison would appear to read the term 'extraordinary' out of the statute." *United States v. Scott*, 461 F. Supp. 3d 851, 863 (E.D. Wis. 2020). "[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

Defendant has not alleged that he suffers from any underlying conditions that put him at higher risk if he were to contract COVID-19. Instead, Defendant bases his argument on concerns about the potential threat of new strains of COVID-19 infecting FCI Sandstone and the BOP's general response to the pandemic and inmate safety. (Docket #72 at 4–5). Defendant's concerns that the COVID-19 virus is dangerous to incarcerated people is too generalized as to rise to the level of extraordinary and compelling. Further, Defendant has already tested positive for and recovered from COVID-19 with minimal symptoms, and FCI Sandstone is making strides in vaccinating its staff and inmate population.

Defendant's second basis for release—his "primary reason"—is that he is needed to care for his grandmother and great-grandmother, both of whom are suffering from cancer and other serious health conditions. (*Id.* at 5–6). Defendant states that no other family member is able to care for his ill

relatives. (*Id.*) The Court recognizes that Defendant's family is undergoing hardship as a result of Defendant's incarceration during a pandemic. But again, this is not a situation unique to Defendant. Courts have found that the burden placed on a defendant's family by the defendant's incarceration is not a reason to justify release. *See, e.g., United States v. Nazer*, 458 F. Supp. 3d 967, 973 (N.D. Ill. 2020) (holding that a defendant's spouse's inability to watch and homeschool their kids due to her job in healthcare during the COVID-19 pandemic did not constitute an extraordinary or compelling circumstance as would warrant a reduction of his sentence); *United States v. Schnabel*, No. 2:17-CR-169, 2020 WL 3566613, at *4 (S.D. Ohio July 1, 2020) ("[T]he incarceration of many inmates poses a hardship to their families. The defendant's family circumstances are not extraordinary."); *United States v. Ingram*, No. 2:14-CR-40, 2019 WL 3162305, at *2 (S.D. Ohio July 16, 2019) ("Many, if not all inmates, have aging and sick parents. Such circumstance is not extraordinary."). The hardships put on Defendant's family by his incarceration do not constitute an extraordinary and compelling reason.[4]

## 5. CONCLUSION

Defendant has exhausted his administrative remedies. However, he has not proffered an extraordinary and compelling reason warranting his

---

[4]Although the Court is permitted to stray from the guidelines, the commentary to U.S.S.G. § 1B1.13 provides two situations in which "family circumstances" may constitute extraordinary and compelling reasons: (1) "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children; and (2) "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." Neither circumstance is applicable in the present case.

release. Therefore, the Court will deny Defendant's motion for compassionate release, (Docket #72).

Accordingly,

**IT IS ORDERED** that Defendant Christopher E. Morgan's motion for compassionate release (Docket #72) be and the same is hereby **DENIED**.

Dated at Milwaukee, Wisconsin, this 19th day of May, 2021.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge